Steven C. Smith (4508)
Kipp S. Muir (15400)
SMITH LC
4 Park Plaza, Ste. 1050
Irvine, California 92614
(949) 416-5000
ssmith@smith-lc.com
kmuir@smith-lc.com

Aaron R. Harris (12111)
Tyler M. Hawkins (13234)
SMITH LC
2912 W. Executive Pkwy, Ste. 240
Lehi, Utah 84043
(385) 309-0000
aharris@smith-lc.com
thawkins@smith-lc.com

Stephen C. Biggs (17850)
SMITH LC
40 N Center St., Ste. 104
Mesa, Arizona 85201
(480) 361-8575
sbiggs@smith-lc.com

*Attorneys for Plaintiffs*
dōTERRA Holdings, LLC and dōTERRA International, LLC

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **dōTERRA HOLDINGS, LLC**, a Utah limited liability company; **dōTERRA INTERNATIONAL, LLC**, a Utah limited liability company, <br><br> Plaintiffs, <br> v. <br> **JD.COM, INC.**, a foreign corporation; **JINGDONG E-COMMERCE (TRADE) HONG KONG CORPORATION LIMITED**, a foreign corporation; **BXYTONLINE SELLER a/k/a ONLINE SELLER**, a person or business entity of unknown type, <br><br> Defendants. | **COMPLAINT** <br><br> JURY DEMAND <br><br> Case No. |

Plaintiffs dōTERRA Holdings, LLC and dōTERRA International, LLC (collectively "Plaintiffs" or "dōTERRA") allege and complain as follows:

## PARTIES

1.      Plaintiff dōTERRA Holdings, LLC is a Utah limited liability company with its principal place of business at 389 South 1300 West, Pleasant Grove, Utah 84062.

2.      Plaintiff dōTERRA International, LLC is a Utah limited liability company with its principal place of business at 389 South 1300 West, Pleasant Grove, Utah 84062.

3.      JD.com, Inc. ("JD.com") is a publicly-traded foreign corporation incorporated in the Cayman Islands and headquartered in Beijing, China. Shares of JD.com's stock are listed on the NASDAQ Stock Exchange in the United States.

4.      Jingdong E-Commerce (Trade) Hong Kong Corporation Limited ("Jingdong") is a foreign corporation believed to be incorporated and headquartered in Hong Kong. Jingdong is a wholly-owned subsidiary of JD.com.

5.      "Bxytonline Seller" and "Online Seller" are pseudonyms for one or more individuals or entities of unknown type and citizenship that operate from warehouses or other commercial properties in the United States. The pseudonyms "Bxytonline Seller" and "Online Seller" appeared on the first line of the return address portion of the shipping labels affixed to the parcels in which two articles of the counterfeit goods that are the subject matter of this action were mailed via United States Postal Service first-class mail to a Utah resident who purchased those items from the "Joybuy" seller account on Walmart.com. Based on these circumstances, dōTERRA believes and therefore alleges that the defendants sued under the pseudonym "Bxytonline Seller a/k/a Online Seller" distribute the products JD.com and Jingdong advertise,

2

offer for sale, and sell through the Joybuy account (and possibly other seller accounts) on Walmart.com, including the infringing and counterfeit goods that are the subject matter of this action. The "Bxytonline Seller a/k/a Online Seller" defendants are therefore personally liable for the causes of action alleged herein based on their own conduct, and Defendants JD.com and Jingdong bear respondeat superior liability for the "Bxytonline Seller a/k/a Online Seller" defendants' wrongful acts because the "Bxytonline Seller a/k/a Online Seller" defendants were acting as agents of JD.com and Jingdong with respect to the conduct alleged herein and that conduct was undertaken within the course and scope of the "Bxytonline Seller a/k/a Online Seller" defendants' agency for JD.com and Jingdong.

6.     JD.com, Jingdong, and the "Bxytonline Seller a/k/a Online Seller" defendants are referred to collectively in this complaint as "Defendants." There may be other persons presently unknown to dōTERRA who are also liable for the conduct and Lanham Act violations alleged herein, and dōTERRA reserves the right to amend this complaint under Federal Rule of Civil Procedure 15, or to seek an order under Federal Rule of Civil Procedure 21 adding additional defendants, if dōTERRA later discovers the existence and identity of other persons who participated in the Lanham Act violations alleged herein.

## JURISDICTION AND VENUE

7.     This court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1338 because the claims asserted by dōTERRA against Defendants arise under the federal Lanham Act.

8.     This court has personal jurisdiction over each of the Defendants pursuant to the Utah Nonresident Jurisdiction Act, Utah Code Ann. § 78B-3-205. Each of the Defendants, in

person or through an agent, transacted business within the state of Utah and contracted to supply goods in the state of Utah by advertising, offering to sell, selling, or distributing the infringing and counterfeit goods that are the subject matter of this action to one or more Utah residents, knowing those people lived in Utah. Additionally, each of the Defendants, in person or through an agent, caused injury to dōTERRA in the state of Utah through the Lanham Act violations alleged in this complaint. Defendants counterfeit dōTERRA products in violation of dōTERRA's trademark and other federally-protected rights; they advertise and offer to sell these counterfeit products using dōTERRA's registered trademarks and its distinctive trade dress (or confusingly similar marks and trade dress) through at least the Walmart.com website—an online marketplace where people and businesses advertise, offer for sale, sell, and distributes goods to Utah residents; and Defendants sell and distribute these counterfeit products to Utah residents. Defendants' conduct is intended to harm dōTERRA, which has its principal place of business in Utah; the brunt of that harm is felt by dōTERRA in Utah; and Defendants knew or should have known that their conduct would cause dōTERRA harm, the brunt of which dōTERRA would suffer in Utah.

9.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Utah.

## FACTUAL BACKGROUND

10.    dōTERRA began offering products in 2008 throughout the United States. dōTERRA's products are principally sold to consumers through independent distributors or through dōTERRA's company website. Currently, dōTERRA has millions of distributors located throughout the United States and worldwide.

4

11.     dōTERRA places a high value on the quality of its essential oil and other personal care products. dōTERRA partners with responsible artisans around the world to grow high quality plants. Similarly, dōTERRA partners with skilled distillers and scientists to ensure its products are of supreme quality.

12.     dōTERRA sells a variety of individual essential oils and essential oil blends, nutritional supplements, and other personal care products.

13.     dōTERRA owns the following trademarks relevant to this action, which are registered on the Principal Register of the United States Patent and Trademark Office (collectively, "the dōTERRA Marks"):

a.   The standard character mark "DEEP BLUE" for "Analgesic balm; Analgesic preparations; Topical Analgesics." (U.S. Trademark Registration No. 6,603,590 registered on December 28, 2021, with a first-use-in-commerce date of April 25, 2008.)

b.   The standard character mark "DEEP BLUE" for "Essential oils; Essential oils for household use; Essential oils for personal use; Massage oil; Massage oils; Natural essential oils; Aromatherapy oils; Bath oils; Body oils; Cosmetic oils; Cosmetic oils for the epidermis; Essential oils for use in manufacturing of gel caps and other dietary supplements; Essential oils for use in the manufacture of scented products; Oils for toiletry purposes; Skin and body topical lotions, creams and oils for cosmetic use; Oils for perfumes and scents; Peppermint oil; Perfume oils." (U.S. Trademark Registration No. 3,617,243 registered on May

5, 2009, and amended December 3, 2019, with a first-use-in-commerce date of April 25, 2008.)

c.  The standard character mark "DOTERRA" for "Analgesic balm; Analgesic preparations; Topical analgesics." (U.S. Trademark Registration No. 6,175,386 registered on October 13, 2020, with a first-use-in-commerce date of August 10, 2011.)

d.  The standard character mark "DOTERRA" for "Mentholated ointment for medical use." (U.S. Trademark Registration No. 6,175,385 registered on October 13, 2020, with a first-use-in-commerce date of September 11, 2015.)

e.  The standard character mark "DOTERRA" for "Aromatherapy oils; Bath oils; Body oils; Cosmetic oils; Cosmetic oils for the epidermis; Essential oils; Essential oils for flavoring beverages; Essential oils for food flavorings; Essential oils for household use; Essential oils for personal use; Essential oils for use in manufacturing of gelcaps and other dietary supplements; Essential oils for use in the manufacture of scented products; Lavender oil; Massage oils; Natural essential oils; Oils for cleaning purposes; Oils for toiletry purposes; Peppermint oil; Skin and body topical lotions, creams and oils for cosmetic use; Food flavorings prepared from essential oils; Massage oil; Perfume oils; Tanning oils; Aromatherapy body care products, namely, body lotion, shower gel, cuticle cream, shampoo, conditioner, non-medicated lip balm, soap, body polish, body and foot scrub and non-medicated foot cream; Beauty creams for body care; Deodorants for body care; Non-medicated skin care preparations,

6

namely, creams, lotions, gels, toners, cleaners and peels; Skin clarifiers; Skin cleansers; Skin creams; Skin lotions; Skin moisturizer; Skin toners; Soaps for body care; Wrinkle removing skin care preparations; Hair shampoos and conditioners; Hair styling preparations; Fragrances." (U.S. Trademark Registration No. 3,641,123 registered on June 16, 2009, with a first-use-in-commerce date of April 29, 2008.)

f.   The standard character mark "DOTERRA ON GUARD" for "Aromatherapy oil; Aromatherapy oils; Essential oils; Essential oils for household use; Essential oils for personal use; Essential oils for use in manufacturing of gelcaps and other dietary supplements; Essential oils for use in the manufacture of scented products; Massage oil; Massage oils; Natural essential oils; Oils for cleaning purposes; Oils for perfumes and scents; Oils for toiletry purposes; Scented oils." (U.S. Trademark Registration No. 3,806,204 registered on June 22, 2010, with a first-use-in-commerce date of May 8, 2008.)

14.    Since the inception of their use, the dōTERRA Marks have been used by dōTERRA as a source identifier for dōTERRA's high-quality goods. dōTERRA has extensively used the dōTERRA Marks in the United States, and throughout the world, to identify dōTERRA as the source of dōTERRA's goods and services. dōTERRA has made significant efforts to advertise, market, and promote the dōTERRA Marks in the United States and, as a result, the marks have become well recognized by consumers as distinctive symbols of and source identifiers for dōTERRA's goods and services.

15.    dōTERRA uses both the DOTERRA and DEEP BLUE marks to advertise, offer for sale, and sell a product called Deep Blue® Rub, which includes dōTERRA's proprietary essential oil blend called Deep Blue®. Below is a picture that accurately portrays a genuine article of dōTERRA's Deep Blue® Rub product, including the distinctive, nonfunctional trade dress used by dōTERRA during the relevant time period in connection with that product:



16.    dōTERRA also uses both the DOTERRA and the DOTERRA ON GUARD marks to advertise, offer for sale, sell, and distribute an essential oil product called dōTERRA On Guard®, which is a proprietary blend of essential oils. Below is a picture that accurately depicts a genuine article of the dōTERRA On Guard® product manfuctured, sold, and distributed by dōTERRA—including the distinctive, nonfunctional trade dress used by dōTERRA during the relevant time period in connection with that product:

8



17.    The DOTERRA mark is a "famous mark" within the meaning of 15 U.S.C. §
1125(c) that is inherently distinctive and that has acquired distinctiveness through dōTERRA's
extensive use of the mark to identify dōTERRA as the source of the goods it advertises, offers for
sale, sells, and distributes under the mark.

18.    dōTERRA has been advertising, offering for sale, selling, and distributing its goods
under the DOTERRA mark since 2008, and the mark has received extensive publicity from third
parties since that time, leading to wide recognition of the mark among the general consuming
public of the United States as a designation of the source of dōTERRA's goods. That recognition
is evidenced by the nationwide advertising and marketing that dōTERRA and its independent
distributors conduct using the DOTERRA mark as a source identifier for dōTERRA's goods,
including on dōTERRA's company website (https://www.doterra.com/US/en), in social media
posts, in print and digital media advertisements and marketing materials, and through the person-
to-person interactions between dōTERRA's independent distributors and their acquaintances and
customers.

19.    Numerous third parties—including traditional media outlets, social media influencers, bloggers, and others—recognize and publicize the DOTERRA mark as a source identifier for dōTERRA's high-quality goods.

20.    In the past year alone, dōTERRA has sold over 1.5 million units of its Deep Blue® products in the United States using the DOTERRA mark and the DEEP BLUE mark as source identifiers for those goods.

21.    During the last year, dōTERRA's sales in the United States of its 4-ounce Deep Blue® Rub product generated millions of dollars in revenue for dōTERRA.

22.    dōTERRA has sold millions of units of its dōTERRA On Guard® products in the United States using the DOTERRA and DOTERRA ON GUARD marks as source identifiers for those goods.

23.    During the last year, dōTERRA's sales in the United States of its dōTERRA On Guard® essential oil product generated millions of dollars in revenue for dōTERRA.

24.    Defendant JD.com operates online retail and marketplace e-commerce businesses that purport to offer customers a wide selection of authentic products at competitive prices.

25.    One of the channels of interstate commerce through which JD.com advertises, offers for sale, sells, and distributes products in the United States is Walmart's online marketplace, Walmart.com.

26.    Directly or through its wholly-owned subsidiary Jingdong, JD.com operates the "Joybuy" seller account on Walmart.com and the Joybuy.com English online marketplace. Joybuy is thus a fictional name through which JD.com and Jingdong advertise, offer for sale, sell, and distribute goods on Walmart.com.

27.     The profile for the "Joybuy" seller account on Walmart.com identifies Jingdong as the seller's "business name," and it also implies that Jingdong operates or is otherwise associated with the operation of the Joybuy.com English online marketplace.

28.     JD.com operates two "overseas service centers" in the United States—one in California and the other in New Jersey—to provide customer service to consumers who purchase products from its online retail and marketplace operations in the United States, including customers who purchase products from the "Joybuy" seller account on Walmart.com.

29.      In communications to the public, including on its own corporate website, JD.com boasts that it "has always had a strict 'zero-tolerance' policy regarding counterfeit products." JD.com further represents to consumers that it sources all of its products "directly from world-leading global brands and reputable merchants" and that its business model "is designed to stop counterfeits." https://corporate.jd.com/commitmentToQualityAuthenticity (last visited Dec. 27, 2022). Through these and other similar communications, JD.com actively attempts to persuade consumers that any products purchased from JD.com or Jingdong (its wholly-owned subsidiary) are genuine products and not counterfeits—including the products JD.com and Jingdong advertise, offer for sale, sell, and distribute through the "Joybuy" seller account (and possibly other seller accounts) on Walmart.com.

30.     Contrary to the perception JD.com and Jingdong attempt to create among consumers that all of the products they advertise, offer for sale, sell, and distribute are authentic, non-counterfeit goods, JD.com and Jingdong advertise, offer for sale, and sell on Walmart.com counterfeits of at least two dōTERRA products: dōTERRA's 4-ounce Deep Blue® Rub topical

cream product and its dōTERRA On Guard® essential oil blend product (in both 15-mililiter and 5-mililiter volume containers).

31.    After discovering that counterfeits of dōTERRA's 4-ounce Deep Blue® Rub product were being advertised, offered for sale, and sold on Walmart.com through the Joybuy seller account's online marketplace store, dōTERRA's Member Protection department contacted JD.com and Jingdong in October 2022 through JD.com's overseas service center and notified JD.com and Jingdong of 11 separate listings on Walmart.com attributed to the Joybuy seller account that advertised and offered for sale counterfeits of dōTERRA's 4-ounce Deep Blue® Rub product.

32.    In a series of email communications sent from the oversea-service@jd.com email address, employees or agents of JD.com and Jingdong who affirmatively stated they were responding on behalf of the "Joybuy store on Walmart" acknowledged receipt of dōTERRA's complaints about the use of the Joybuy seller account on Walmart.com to advertise and offer for sale counterfeits of dōTERRA's 4-ounce Deep Blue® Rub product and affirmatively represented to dōTERRA on October 17, 2022, that Defendants' "inventory" of the counterfeit products had "been removed" from Walmart's online marketplace.

33.    Despite that representation, JD.com and Jingdong continued to advertise, offer for sale, and sell counterfeits of dōTERRA's 4-ounce Deep Blue® Rub product through the Joybuy seller account (and possibly other seller accounts) on Walmart.com.

34.    For example, attached as **Exhibit 1** to this complaint is a genuine printout that accurately depicts the appearance of a Walmart online marketplace listing on October 24, 2022, in which JD.com and Jingdong advertised and offered for sale in the United States a counterfeit of

dōTERRA's 4-ounce Deep Blue® Rub product on Walmart.com using the Joybuy seller account. That listing advertised and offered the counterfeit item for sale under the heading "doTERRA Deep Blue Rub Body Cream 4 floz./120 mL."

35.     On October 24, 2022, a Utah resident purchased the "doTERRA Deep Blue Rub Body Cream 4 floz./120 mL" product advertised and offered for sale by JD.com and Jingdong on Walmart.com through the listing depicted in Exhibit 1. That purchaser directed Defendants to ship the item to an address in Provo, Utah. JD.com and Jingdong therefore knew they had sold the counterfeit of dōTERRA's Deep Blue® Rub product to a Utah resident, and they knew they would be distributing the product to that person in Utah, using the United States Postal Service to make a physical entry into the state of Utah.

36.     The defendant or defendants sued herein under the pseudonym "Bxytonline Seller" distribute the counterfeits of dōTERRA's Deep Blue® Rub product sold through the Joybuy seller account on Walmart's online marketplace, Walmart.com. Upon information and belief, dōTERRA alleges that Bxytonline Seller, alone or in conjunction with other persons or entities, imports the counterfeit goods into the United States where Bxytonline Seller receives and stores the counterfeit goods at one or more of its warehouses; packages the counterfeit goods for shipment; and then transports the counterfeit goods to a post office or arranges for their pickup by the United States Postal Service for the final leg of delivery to the unwitting customers who purchase those goods on Walmart.com from the Joybuy seller account, believing the goods to be genuine dōTERRA products sourced from dōTERRA.

37.     After the Utah resident who purchased a counterfeit of dōTERRA's Deep Blue® Rub product from the Joybuy seller account on October 24, 2022, informed JD.com and Jingdong

13

of her shipping address in Utah, Bxytonline Seller packaged a counterfeit of dōTERRA's Deep Blue® Rub product for shipping to the Utah resident and delivered the item (or arranged for its delivery) to the United States Postal Service for the final leg of its delivery to the Utah customer in Provo, Utah.

38.    Genuine photographs that accurately depict the counterfeit of dōTERRA's Deep Blue Rub product that JD.com and Jingdong sold to the Utah resident on October 24, 2022, through the listing on Walmart.com depicted in Exhibit 1 and that Bxytonline Seller subsequently distributed to the Utah resident, and the shipping container in which the product was delivered to the Utah resident, are attached as **Exhibit 2** to this complaint.

39.    The return address on the shipping label affixed to the shipping container for the counterfeit product was "BXYTONLINE SELLER, 975 S LA CIENEGA BLVD, INGLEWOO CA 90304."

40.    The container, packaging, and labels for the "doTERRA Deep Blue Rub Body Cream 4 floz./120 mL" product that Defendants advertised, offered for sale, sold, and distributed to the Utah resident—including Defendants' prominent use of both the DOTERRA and DEEP BLUE marks to falsely suggest to consumers that dōTERRA is the source of the Defendants' product—mimics the way dōTERRA uses those dōTERRA Marks on the container and labels for its genuine Deep Blue® Rub product and the distinctive trade dress dōTERRA uses for its genuine Deep Blue® Rub product to identify dōTERRA as the source of the product.

41.    Defendants' product, however, was a counterfeit and is not a genuine article of dōTERRA's Deep Blue® product.

42.    For example, Defendants' product came in a cardboard carton (or box) indicating it was for a 4-ounce container. dōTERRA does not use a cardboard carton or box in the United States to package and distribute its Deep Blue® Rub product in 4-ounce size containers. Rather, dōTERRA sells its 4-ounce size Deep Blue® Rub product in a tube without using a carton or box as an additional packaging container for the tube. Also, while the colors on Defendants' carton and tube are strikingly similar to the colors dōTERRA used during the relevant time period in the trade dress and packaging for its genuine Deep Blue® Rub product, at least some of the colors are not an exact match.

43.    The back of the box in which Defendants' counterfeit product came includes the words "dōTERRAR® Deep Blue® Rub" in a block of text describing the product. dōTERRA is unaware of any instance where a genuine label or container for one of its products misspelled the trademarked name "dōTERRA" as "dōTERRAR." And, as of the date of this filing, a search of the U.S. Patent and Trademark Office's Trademark Electronic Search System yields no results for the search "dōTERRAR"—which is a confusingly similar variant on the DOTERRA mark owned by dōTERRA and used in commerce by dōTERRA as a source identifier for the type of goods that Defendants are selling under their infringing mark.

44.    The carton used by Defendants to package their counterfeit "Deep Blue Rub" product has other printing and text errors that differentiate it from the quality of packaging dōTERRA uses on its own genuine Deep Blue® Rub products. Those errors include the misspelling of the word "Ingredients" as "Ingredlients" on the back of the carton, missing periods in the caution language, and the inconsistent use of italics in the ingredient list.

45.    Other evidence of the fact that Defendants' product is a counterfeit of dōTERRA's Deep Blue® Rub product and not a genuine article of that product from dōTERRA can be found in the manner in which the lot and date number are printed on the carton Defendants used to package their counterfeit product. Defendants printed the lot and date number directly onto the carton as part of the initial lithographic process. dōTERRA uses a different process.

46.    The tube inside of the carton in which Defendants packaged their counterfeit "Deep Blue Rub" product lists a purported batch number for the product of 220829. On the carton, however, the lot number is listed as 220429. dōTERRA's internal records, which are kept in the ordinary course of business, confirm that dōTERRA has never manufactured or sold a Deep Blue® Rub product with either of the purported lot numbers listed on the packaging for Defendants' counterfeit "Deep Blue Rub" product, further demonstrating the product being sold by Defendants is a counterfeit and not a genuine article of dōTERRA's Deep Blue® Rub product.

47.    Defendants' carton has an expiration date of April 2025 and the tube has an expiration date of August 2025. dōTERRA has and follows a process for assigning lot numbers and expiration dates specific to particular products. That process includes a specific connection between the day the product was produced, the corresponding lot number, and the accompanying expiration date. Even if dōTERRA had a lot number 220829 or 220429 for its Deep Blue® Rub product sold in a 4-ounce tube, which it does not, the expiration date required under dōTERRA's process would not be April 2025 or August 2025. Similarly, if dōTERRA had a genuine Deep Blue® Rub product in a 4-ounce tube that had April 2025 or August 2025 expiration dates, neither would not have a lot number 220829 or 220429 under dōTERRA's practice.

48.    dōTERRA's Quality Assurance department is responsible for determining whether the products it manufactures and distributes comply with dōTERRA's specifications and internal quality controls. If a product deviates from those specifications or internal quality controls, those deviations are noted on an internal log. dōTERRA's log does not show any of the aforementioned deviations identified with Defendants' product.

49.    Defendants' use of some of the dōTERRA Marks and the confusingly similar "dōTERRAR" mark as source identifiers on Defendants' "Deep Blue Rub" product was a knowing and intentional act designed to mislead consumers into believing that dōTERRA is the source of Defendants' goods in order to unlawfully take advantage of and unfairly trade on dōTERRA's goodwill, the goodwill of the famous and inherently distinctive DOTERRA mark, and the goodwill of the DEEP BLUE mark, which dōTERRA has built up through its extensive use of the DOTERRA and DEEP BLUE marks for over a decade throughout the United States (and the world) as source identifiers for dōTERRA's high-quality goods.

50.    On information and belief, Defendants' counterfeit "Deep Blue Rub" product is of inferior quality to dōTERRA's genuine Deep Blue® Rub product. By advertising, offering for sale, selling, and distributing a counterfeit product of inferior quality to dōTERRA's genuine product, Defendants are causing foreseeable and substantial harm to dōTERRA's reputation and business goodwill, and to the value of the dōTERRA Marks by associating Defendants' inferior goods with the DOTERRA and DEEP BLUE marks, which stand for the highest quality products in the essential oil industry.

51.    In addition to the listing depicted in Exhibit 1, there are and have been other listings on Walmart.com through which Defendants have advertised, offered for sale, sold, and distributed

counterfeits of dōTERRA's Deep Blue® Rub product using the DOTERRA and DEEP BLUE marks without the authorization or consent of dōTERRA. While many of those listings were attributed to the Joybuy seller account, other listings on Walmart.com have been made under other seller accounts using the same product pictures that JD.com and Jingdong use to advertise and offer for sale their counterfeits of dōTERRA's Deep Blue® Rub product under the "Joybuy" username—including pictures that depict the cardboard carton or box in which Defendants sell and distribute their counterfeit products complete with the misspellings and other textual errors described in paragraphs 43 and 44 of this complaint.

52.    Using at least the Joybuy seller account, JD.com and Jingdong also advertise, offer for sale, sell, and distribute a counterfeit of dōTERRA's dōTERRA On Guard® essential oil blend product on Walmart.com.

53.    The defendant or defendants sued herein under the pseudonym "Online Seller" distribute the counterfeits of the dōTERRA On Guard® product sold by JD.com and Jingdong through the Joybuy seller account on Walmart.com. Upon information and belief, dōTERRA alleges that Online Seller, alone or in conjunction with other persons or entities, imports the counterfeit goods into the United States where Online Seller receives and stores the counterfeit goods at one or more of its warehouses; packages the counterfeit goods for shipment; and then transports the counterfeit goods to a post office or arranges for their pickup by the United States Postal Service for the final leg of delivery to the unwitting customers who purchase those goods on Walmart.com from the Joybuy seller account, believing the goods to be genuine dōTERRA products sourced from dōTERRA.

54.     Attached as **Exhibit 3** to this complaint is a genuine and accurate screenshot captured on November 11, 2022, of one of JD.com and Jingdong's listings on Walmart.com for the counterfeits of dōTERRA's dōTERRA On Guard® product that JD.com and Jingdong advertise, offer for sale, sell, and distribute on that online marketplace using the Joybuy seller account. That listing advertised and offered the items for sale under the heading "doTERRA On Guard Essential Oil Protective Blend 15 ml (2 pack)."

55.     On November 15, 2022, a Utah resident purchased the "doTERRA On Guard Essential Oil Protective Blend 15 ml (2 pack)" item advertised and offered for sale by JD.com and Jingdong on Walmart.com through the listing depicted in Exhibit 3 or a similar listing. That purchaser directed Defendants to ship the item to an address in Provo, Utah.

56.     Online Seller then packaged two counterfeits of the dōTERRA On Guard® product for shipping to the Utah resident and delivered the package (or arranged for its delivery) to the United States Postal Service for the final leg of its delivery to the Utah customer in Provo, Utah.

57.     Genuine photographs that accurately depict the counterfeits of dōTERRA's dōTERRA On Guard® product that JD.com and Jingdong sold to the Utah resident on November 15, 2022, through the listing on Walmart.com depicted in Exhibit 3 (or a substantially similar listing) and that Online Seller subsequently distributed to the Utah resident, and the shipping container in which the products were delivered to the Utah resident, are attached as **Exhibit 4** to this complaint.

58.     The return address on the shipping label affixed to the shipping container for the counterfeit product was "ONLINE SELLER, ONLINE SELLER, 975 S LA CIENEGA BLVD, INGLEWOO CA 90304."

59.     The container, packaging, and labels for the "doTERRA On Guard Essential Oil Protective Blend 15 ml (2 pack)" product that Defendants advertised, offered for sale, sold, and distributed to the Utah resident—including Defendants' prominent use of both the DOTERRA and the DOTERRA ON GUARD marks to falsely suggest to consumers that dōTERRA is the source of Defendants' product—mimics the way dōTERRA uses the DOTTERA and DOTERA ON GUARD marks on the container and labels for its genuine dōTERRA On Guard® essential oil blend product and the distinctive trade dress dōTERRA uses for its genuine dōTERRA On Guard essential oil blend product to identify dōTERRA as the source of that product.

60.     Defendants' "doTERRA On Guard" essential oil blend product, however, was a counterfeit and is not a genuine dōTERRA product.

61.     While other elements of Defendants' labeling mimics dōTERRA's non-functional and distinctive trade dress, the colors used on the label of Defendants' counterfeit products are not an exact match to the colors dōTERRA uses on the label of its genuine dōTERRA On Guard® essential oil blend product.

62.     The seal in the cap of Defendants' counterfeit "doTERRA On Guard" product was ineffective and the liquid product inside the bottles was leaking when they were received by the Utah resident who purchased them from JD.com and Jingdong through the Joybuy seller account's listing on Walmart.com. Genuine articles of dōTERRA On Guard essential oil blend are sealed to prevent the bottles from leaking.

63.     Defendants' counterfeit "doTERRA On Guard" product does not have the same aroma as dōTERRA's genuine dōTERRA On Guard® essential oil blend product. The aroma of Defendants' counterfeit "doTERRA On Guard" product is also not consistent with the expected

20

aroma for an essential oil blend containing the ingredients listed on the label of both Defendants'
counterfeit "doTERRA On Guard" product and dōTERRA's own genuine articles of its dōTERRA
On Guard essential oil blend products.

64.    There is no lot number or expiration date printed on the bottom of each bottle of
Defendants' counterfeit "doTERRA On Guard" product. Genuine articles of dōTERRA's
dōTERRA On Guard® essential oil blend product include a lot number and expiration date on the
bottom of each bottle.

65.    There is no unique QR code on the label of Defendants' counterfeit "doTERRA On
Guard" product. Rather, Defendants' counterfeit product merely includes the item number
(31100001) that dōTERRA uses to identify its 15-mililiter size dōTERRA On Guard® essential
oil blend product. Genuine articles of dōTERRA's dōTERRA On Guard® essential oil blend
product in 15-mililiter size containers include a unique QR code on their label.

66.    Defendants' use of the DOTERRA and DOTERRA ON GUARD marks as source
identifiers on Defendants' "doTERRA On Guard" product was a knowing and intentional act
designed to mislead consumers into believing that dōTERRA is the source of Defendants' goods
in order to unlawfully take advantage of and unfairly trade on dōTERRA's goodwill, the goodwill
of the famous and inherently distinctive DOTERRA mark, and the goodwill of the DOTERRA
ON GUARD mark, which dōTERRA has built up through its extensive use of the DOTERRA and
DOTERRA ON GUARD marks for over a decade throughout the United States (and the world) as
source identifiers for dōTERRA's high-quality goods.

67.    On information and belief, Defendants' counterfeit "doTERRA On Guard"
products are of inferior quality to dōTERRA's genuine dōTERRA On Guard® products. By

advertising, offer for sale, selling, and distributing counterfeit products of inferior quality to dōTERRA's genuine products, Defendants are causing foreseeable and substantial harm to dōTERRA's reputation and business goodwill, and to the value of the dōTERRA Marks by associating Defendants' inferior goods with the dōTERRA Marks, which stand for the highest quality products in the essential oil industry.

68.     Defendants' use of the dōTERRA Marks is without dōTERRA's permission or consent. And contrary to a false and misleading statement included on the label of Defendants' counterfeit "Deep Blue Rub" product, that product is not "Manufactured exclusively for dōTERRA Intl, LLC."

69.     On information and belief, Defendants have advertised, offered for sale, sold, and distributed other counterfeit products in violation of dōTERRA's rights.

70.     Defendants' infringement of the dōTERRA Marks, counterfeiting of dōTERRA's goods and marks, and false advertising of its counterfeit goods as genuine dōTERRA products using counterfeited marks wrongly diverts web traffic and web users who are searching for genuine dōTERRA products to Defendants' products. Defendants' conduct falsely leads consumers to believe that Defendants' counterfeit products come from the same source as dōTERRA's genuine products, to the direct and substantial detriment of dōTERRA.

71.     Defendants' use of the dōTERRA Marks or confusingly similar marks to advertise, offer for sale, sell, and distribute Defendants' competing goods constitutes an infringement of dōTERRA's registered trademarks. Defendants' use of the dōTERRA Marks or confusingly similar marks to advertise, offer for sale, sell, and distribute competing products is likely to cause

consumer confusion and a false association between Defendants' goods and dōTERRA's goods, misleading consumers to believe the goods emanate from the same source: dōTERRA.

72.     To address the irreparable harm caused by Defendants' conduct, dōTERRA seeks, among other things, a preliminary and permanent injunction enjoining Defendants' wrongful and unlawful use of the dōTERRA Marks and any confusingly similar marks to advertise, offer for sale, sell, or distribute Defendants' competing products, and dōTERRA seeks to recover damages for the harm Defendants' wrongful and unlawful conduct has already caused and all other remedies authorized by law for Defendant's wrongful and unlawful conduct.

73.     Defendants' continuous, willful, intentional, and unauthorized use of the dōTERRA Marks constitutes an infringement of dōTERRA's trademark rights. Defendants should not be permitted to trade off of the dōTERRA Marks, which have acquired significant goodwill and consumer recognition in the essential oil and personal care industry. Defendants are unlawfully using the dōTERRA Marks to directly and unfairly compete with dōTERRA.

74.     Accordingly, Defendants should be preliminarily and permanently enjoined from using the dōTERRA Marks, or any confusingly similar marks, in connection with the advertisement, offer for sale, sale, and/or distribution of essential oils, personal care products, and any related goods. In addition, Defendants are liable for damages caused by their past infringements.

**CLAIMS FOR RELIEF**

**COUNT I**

**TRADEMARK INFRINGEMENT**
**VIOLATION OF 15 U.S.C. § 1114(1)**

75.     dōTERRA realleges and incorporates by reference paragraphs 1 through 74 of this complaint, as if fully set forth herein.

76.     The dōTERRA Marks are valid, protectable trademarks.

77.     dōTERRA owns the dōTERRA Marks. dōTERRA has obtained a certificate of registration issued by the United States Patent and Trademark Office for each of the dōTERRA Marks, and dōTERRA's first use of each of the dōTERRA Marks in commerce predates any use Defendants have made in commerce of any reproduction, counterfeit, copy, or colorable imitation of the dōTERRA Marks.

78.     As alleged herein, without dōTERRA's consent, Defendants used in commerce one or more reproductions, counterfeits, copies, or colorable imitations of dōTERRA's federally-registered DOTERRA, DEEP BLUE, and DOTERRA ON GUARD trademarks in connection with the sale, offering for sale, distribution, and advertisement of Defendants' goods—including Defendants' counterfeit "Deep Blue Rub" and "doTERRA On Guard" products—knowing those uses were likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Defendants' goods by leading those consumers to believe that dōTERRA is the source of, sponsors, is affiliated with, or otherwise approves of Defendants' goods, which is not true.

79.     As alleged herein, without dōTERRA's consent, Defendants knowingly applied one or more reproductions, counterfeits, copies, or colorable imitations of dōTERRA's federally-

registered DOTERRA, DEEP BLUE, and DOTERRA ON GUARD trademarks to labels, prints, packages, wrappers, receptacles, and/or advertisements intended to be used in commerce in connection with the sale, offering for sale, distribution, and advertising of Defendants' goods—including Defendants' counterfeit "Deep Blue Rub" and "doTERRA On Guard" products—and Defendants knew their use of their reproductions, counterfeits, copies, or colorable imitations of dōTERRA's federally-registered DOTERRA, DEEP BLUE, and DOTERRA ON GUARD trademarks in the manner described above was likely to cause confusion, cause mistake, or deceive ordinary consumers regarding the source, sponsorship, affiliation, or approval of Defendants' goods by leading those consumers to believe that dōTERRA is the source of, sponsors, is affiliated with, or otherwise approves of Defendants' goods, which is not true.

80.     dōTERRA's federally-registered trademarks for DOTERRA, DEEP BLUE, and DOTERRA ON GUARD cover the types of goods that Defendants sold, offered for sale, distributed, and advertised in commerce using reproductions, counterfeits, copies, or colorable imitations of dōTERRA's federally-registered DOTERRA, DEEP BLUE, and DOTERRA ON GUARD trademarks—including but not limited to Defendants' counterfeit "Deep Blue Rub" and "doTERRA On Guard" products.

81.     In connection with the sale, offering for sale, and distribution of Defendants' goods—including Defendants' counterfeit "Deep Blue Rub" and "doTERRA On Guard" products—Defendants intentionally used one or more spurious marks that were identical with or substantially indistinguishable from doTERRA's federally-registered DOTERRA, DEEP BLUE, and DOTERRA ON GUARD trademarks, knowing the spurious marks they were using were counterfeit marks (as defined in 15 U.S.C. § 1116(d)). Thus, Defendants' use of the counterfeit

DOTERRA, DEEP BLUE, and DOTERRA ON GUARD marks was willful, such that statutory damages of up to $2 million per counterfeit mark per type of goods sold, offered for sale, or distributed by Defendants should be available to dōTERRA (at its election) under 15 U.S.C. § 1117(c) as a remedy for Defendants' use of those counterfeit marks in connection with the sale, offer for sale, or distribution of Defendants' goods, including Defendants' counterfeit "Deep Blue Rub" and "doTERRA On Guard" products.

82.    As a direct and proximate result of Defendants' infringement, dōTERRA has been and is likely to continue to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues, lost profits, diminished goodwill, and other damages to be proved at trial.

83.    Defendants' wrongful conduct alleged herein constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. dōTERRA is entitled to the remedies provided by the Lanham Act for such violation, including recovery of Defendants' profits, any damages sustained by dōTERRA, and the costs of this action. *See* 15 U.S.C. § 1117(a).

84.    Because Defendants' violations of Section 32 of the Lanham Act involve the use of a counterfeit mark or designation that Defendants intentionally used in connection with the sale, offering for sale, and distribution of Defendants' goods, knowing the mark was a counterfeit mark, dōTERRA is entitled to recover treble Defendants' profits or dōTERRA's damages, whichever amount is greater, together with reasonable attorneys' fees and prejudgment interest. *See* 15 U.S.C. § 1117(b).

85.    dōTERRA is being irreparably injured by the unlawful acts of Defendants. dōTERRA has no adequate remedy at law for Defendants' Lanham Act violations because the

dōTERRA Marks are unique and represent to the public dōTERRA's identity, reputation, and goodwill, such that damages alone cannot fully compensate dōTERRA for the harm caused by Defendants' misconduct.

86.    Because of Defendants' intentional and willful conduct, dōTERRA is entitled to the entry of a preliminary and permanent injunction enjoining Defendants from infringing the dōTERRA Marks by (a) using any of those marks—or any reproduction, counterfeit, copy, or colorable imitation of the marks—in connection with the sale, offering for sale, distribution, or advertising of any goods or services covered by dōTERRA's registered trademarks; or (b) reproducing, counterfeiting, copying, or making a colorable imitation of any of the dōTERRA Marks and applying such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of any goods or services covered by dōTERRA's registered trademarks. The injunction should also prohibit the importation into the United States of any of Defendants' goods that are marked or labeled using the Infringing Marks, as provided by 15 U.S.C. § 1125(b).

87.    Under 15 U.S.C. § 1116(d)(1)(A), dōTERRA is entitled to an order providing for the seizure of any and all of Defendants' goods involved in Defendants' infringement of the dōTERRA Marks through the use of a counterfeit mark—including but not limited to Defendants' counterfeit "Deep Blue Rub" and "doTERRA On Guard" products—and any and all records documenting the manufacture, sale, or receipt of those goods.

88.     Under 15 U.S.C. § 1118, dōTERRA is entitled to an order requiring Defendants to deliver up and destroy all labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession bearing any of the dōTERRA Marks.

89.     This case is exceptional within the meaning of 15 U.S.C. §1117(a), and dōTERRA is entitled to recover its attorney's fees and costs in addition to any other remedies allowed by law.

## COUNT II

## FEDERAL UNFAIR COMPETITION
## VIOLATION OF 15 U.S.C. § 1125(a)

90.     dōTERRA realleges and incorporates by reference paragraphs 1 through 89 of this complaint, as if fully set forth herein.

91.     As alleged herein, Defendants used in commerce and on or in connection with their goods and the containers for their goods—including their counterfeit "Deep Blue Rub" and "doTERRA On Guard" products—one or more words, terms, names, symbols, devices, or a combination thereof that is likely to cause confusion, cause mistake, or to deceive an ordinary consumer as to the origin, sponsorship, or approval of Defendants' goods by dōTERRA, in violation of 15 U.S.C. § 1125(a).

92.     As alleged herein, Defendants used in commerce and on or in connection with their counterfeit "Deep Blue Rub" and "doTERRA On Guard" products, and the containers for those products, trade dress that is confusingly similar to the distinctive, nonfunctional trade dress that dōTERRA uses or used during the relevant timeframe on its authentic products, in violation of 15 U.S.C. § 1125(a).

93.     Defendants use the dōTERRA Marks (or confusingly similar marks) to advertise and promote their competing products, including Defendants' counterfeit "Deep Blue Rub" and

"doTERRA On Guard" products, in an effort to confuse or deceive ordinary consumers and cause them to mistakenly believe that dōTERRA is the source of or is affiliated with Defendants' goods.

94.     In connection with the marketing, sale, offering for sale, advertisement, and distribution in commerce of their counterfeit "Deep Blue Rub" and "doTERRA On Guard" products, Defendants used a false or misleading description or representation of fact when they labeled those counterfeit products as dōTERRA products. Defendants also used a false or misleading description or representation of fact when they printed on the label of their counterfeit "Deep Blue Rub" product that it was "Manufactured exclusively for dōTERRA Intl, LLC," when in fact the product was not manufactured for dōTERRA International, LLC, but for Defendants or someone acting in concert with Defendants.

95.     These false and misleading descriptions or representations of fact were likely to cause confusion, cause mistake, or deceive ordinary consumers into falsely believing that Defendants' goods are associated with, affiliated with, connected to, or originate from dōTERRA. These false or misleading descriptions or representations of fact in Defendants' commercial advertising and promotion of its products also misrepresents the nature and characteristics of Defendants' goods by suggesting they were manufactured for dōTERRA and, implicitly, meet dōTERRA's high standard of quality.

96.     Through the unlawful and misleading conduct alleged herein, Defendants are unfairly competing with dōTERRA by attempting to pass off their goods as the goods of dōTERRA, in violation of 15 U.S.C. § 1125(a).

97.     As a direct and proximate result of Defendants' acts of unfair competition in violation of 15 U.S.C. § 1125(a) alleged herein, dōTERRA has been and is likely to continue to be

substantially injured in its business, including its goodwill and reputation, resulting in lost revenues, lost profits, diminished goodwill, and other damages to be proved at trial.

98.     As a remedy for Defendants' acts of unfair competition in violation of 15 U.S.C. § 1125(a) alleged herein, dōTERRA is entitled to the remedies provided by the Lanham Act for such violations, including recovery of Defendants' profits, three times the amount of any damages sustained by dōTERRA, and the costs of this action. *See* 15 U.S.C. § 1117(a).

99.     dōTERRA is being irreparably injured by Defendants' acts of unfair competition in violation of 15 U.S.C. § 1125(a), and dōTERRA has no adequate remedy at law for those violations. Because dōTERRA is likely to succeed on the merits of its claims against Defendants for their unfair competition in violations of 15 U.S.C. § 1125(a), dōTERRA is entitled to the entry of a preliminary and permanent injunction enjoining Defendants from using in commerce on or in connection with any goods or services, or any container for goods, any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (a) is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants' goods with dōTERRA, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by dōTERRA; or (b) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities. The prohibitions imposed on Defendants by such an injunction would include, but not be limited to, prohibiting Defendants from using dōTERRA's trade dress (or a confusingly similar trade dress) on Defendants' products, from falsely labeling

30

Defendants' products as dōTERRA products, and from falsely claiming that Defendants' products are manufactured for dōTERRA.

100.    Unless enjoined by the court, Defendants will continue to compete unfairly with dōTERRA. The resulting irreparable injury to dōTERRA's business, including its goodwill and reputation, requires preliminary and permanent injunctive relief to prevent Defendants' continued unfair competition, and to ameliorate and mitigate dōTERRA's injuries.

101.    Under 15 U.S.C. § 1118, dōTERRA is entitled to an order requiring Defendants to deliver up and destroy all labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession that incorporates trade dress that is confusingly similar to the distinctive, nonfunctional trade dress that dōTERRA uses on its authentic products, or that falsely claims Defendants' goods are dōTERRA products or are manufactured for dōTERRA.

102.    This case is exceptional within the meaning of 15 U.S.C. §1117(a), and dōTERRA is entitled to recover its attorney's fees and costs, in addition to any other remedies provided by law.

## COUNT III

### FALSE ADVERTISING
### VIOLATION OF 15 U.S.C. § 1125(a)(1)(B)

103.    dōTERRA realleges and incorporates by reference paragraphs 1 through 102 of this complaint, as if fully set forth herein.

104.    Defendants advertise and promote their products as being dōTERRA's genuine products and being "Manufactured exclusively for dōTERRA Intl, LLC." These statements, and those similar to it, by Defendants are materially false and misleading because they misrepresent the nature, characteristics, and origin of Defendants' products, in violation of section 43(a)(1)(B)

of the Lanham Act, codified at 15 U.S.C. § 1125(a)(1)(B), by falsely suggesting that Defendants'
counterfeit "Deep Blue Rub" and "doTERRA On Guard" products are genuine dōTERRA
products and that Defendants' counterfeit "Deep Blue Rub" product was manufactured for
dōTERRA, and thereby falsely implying Defendants' counterfeit products are of the same high
quality and character as dōTERRA's brand of products, when they are not.

105.    Defendants do not manufacture, offer for sale, sell, or disbribute any products for
dōTERRA. Statements by Defendants that suggest or imply otherwise are false and misleading,
and such statements cause injury to dōTERRA.

106.    Defendants' false and misleadingly claims that their counterfeit "Deep Blue Rub"
and "doTERRA On Guard" products are dōTERRA products and that their "Deep Blue Rub"
product was manufactured exclusively for dōTERRA constitute commercial advertising or
promotion by a party who is in commercial competition with dōTERRA for the purpose of
influencing consumers to buy Defendants' goods.  Defendants' false statements in this regard on
Walmart.com and on Defendants' product label and packaging are disseminated to the purchasing
public in interstate commerce.

107.    As a remedy for Defendants' acts of false advertising in violation of 15 U.S.C. §
1125(a)(1)(B) alleged herein, dōTERRA is entitled to the remedies provided by the Lanham Act
for such violations, including recovery of Defendants' profits, three times the amount of any
damages sustained by dōTERRA, and the costs of this action. *See* 15 U.S.C. § 1117(a).

108.    The harm caused by Defendants' wrongful acts cannot be fully compensated by
money damages, and dōTERRA will suffer irreparable injury if Defendants' conduct is not
enjoined. dōTERRA is, therefore, entitled to preliminary and permanent injunctive relief

prohibiting Defendants from using in commerce on or in connection with any goods or services, or any container for goods, any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact that, in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities. The prohibitions imposed on Defendants by such an injunction would include, but not be limited to, prohibiting Defendants from falsely claiming that Defendants' products are manufactured for dōTERRA.

109.    Under 15 U.S.C. § 1118, dōTERRA is entitled to an order requiring Defendants to deliver up and destroy all labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession that falsely claim Defendants' goods are dōTERRA goods or that they are manufactured for dōTERRA.

110.    This case is exceptional within the meaning of 15 U.S.C. §1117(a), and dōTERRA is entitled to recover its attorney's fees and costs, in addition to any other remedies provided by law.

## COUNT IV

### DILUTION
### VIOLATION OF 15 U.S.C. § 1125(c)

111.    dōTERRA realleges and incorporates by reference paragraphs 1 through 110 of this complaint, as if fully set forth herein.

112.    As alleged herein, the DOTERRA mark is a "famous mark" within the meaning of 15 U.S.C. § 1125(c) that is inherently distinctive and that has acquired distinctiveness through

dōTERRA's extensive use of the mark to identify dōTERRA as the source of the goods it sells under the mark.

113.    dōTERRA has been advertising its goods under the DOTERRA mark since 2008, and the mark has received extensive publicity from third parties since that time, leading to wide recognition of the mark among the general consuming public of the United States as a designation of the source of dōTERRA's goods.  That recognition is evidenced by the nationwide advertising and marketing that dōTERRA and its independent distributors conduct using the DOTERRA mark as a source identifier for dōTERRA's goods, including on dōTERRA's company website (https://www.doterra.com/US/en), in social media posts, in print and digital media advertisements and marketing materials, and through the person-to-person interactions between dōTERRA's independent distributors and their acquaintances and customers.

114.    Numerous third parties—including traditional media outlets, social media influencers, bloggers, and others—recognize and publicize the DOTERRA mark as a source identifier for dōTERRA's high-quality goods.

115.    In the past year alone, dōTERRA has sold over 1.5 million units of its Deep Blue® products in the United States using the DOTERRA mark as a source identifier for those goods.

116.    In the last year, dōTERRA's sales in the United States of its 4-ounce Deep Blue® Rub product have generated millions of dollars in revenue for dōTERRA.

117.    In the last year, dōTERRA has sold millions of units of its dōTERRA On Guard® products in the United States using the DOTERRA mark as a source identifier for those goods.

118.    In the last year, dōTERRA's sales in the United States of its dōTERRA On Guard® products have generated millions of dollars in revenue for dōTERRA.

119.    As alleged herein, after the time when the DOTERRA mark had already become famous, Defendants began misusing the DOTERRA mark in commerce on and in connection with Defendants' goods—including Defendants' counterfeit "Deep Blue Rub" and "doTERRA On Guard" products—in a manner that is likely to cause dilution by blurring or dilution by tarnishment of the famous DOTERRA mark.

120.    The harm caused by Defendants' wrongful acts cannot be fully compensated by money damages, and dōTERRA will suffer irreparable injury if Defendants' conduct is not enjoined. But because the DOTERRA mark is a famous mark, dōTERRA is entitled to preliminary and permanent injunctive relief under 15 U.S.C. § 1125(c)(1) prohibiting Defendants from any further use in commerce of the DOTERRA mark or any confusingly similar mark, regardless of the presence or absence of actual or likely confusion, or competition, or of actual economic injury.

121.    This case is exceptional within the meaning of 15 U.S.C. §1117(a) and dōTERRA is entitled to recover its attorney's fees and costs, in addition to any other remedies provided by law.

### PRAYER FOR RELIEF

WHEREFORE, dōTERRA respectfully prays for the following relief against Defendants:

1. The entry of a preliminary and permanent injunction enjoining Defendants and their officers, directors, shareholders, managers, members, agents, servants, employees, and those persons or entities in active concert or participation with them as follows:

    a. From infringing the dōTERRA Marks by using any of those marks—or any reproduction, counterfeit, copy, or colorable imitation of the marks—in

connection with the sale, offering for sale, distribution, or advertising of any goods or services covered by dōTERRA's registered trademarks.

b.   From infringing the dōTERRA Marks by reproducing, counterfeiting, copying, or making a colorable imitation of any of the dōTERRA Marks and applying such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of any goods or services covered by dōTERRA's registered trademarks.

c.   From any further use in commerce of the DOTERRA, DEEP BLUE, and DOTERRA ON GUARD marks or any confusingly similar marks.

d.   From using in commerce on or in connection with any goods or services, or any container for goods, any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants' goods with dōTERRA, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by dōTERRA.

e.   From using in commerce on or in connection with any goods or services, or any container for goods, any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading

description of fact, or false or misleading representation of fact that, in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities.

f.  From using dōTERRA's trade dress (or a confusingly similar trade dress) on Defendants' products.

g.  From falsely claiming that Defendants' products are dōTERRA products or that they are manufactured for dōTERRA.

h.  From importing into the United States any of Defendants' goods that are marked or labeled using the dōTERRA Marks or any confusingly similar marks, as provided by 15 U.S.C. § 1125(b).

i.  From using the dōTERRA Marks or any trademark, service mark, logo, or trade name that is confusingly similar to the dōTERRA Marks in connection with Google or any other internet search engine.

j.  Requiring Defendants to promptly eliminate any and all false advertising using the dōTERRA Marks or any other confusingly similar marks or designations from all advertising, the internet, search engines, websites, and media— including but not limited to online marketplaces, online auctions, newspapers, flyers, coupons, promotions, indoor and outdoor signs, telephone books, telephone directory assistance listings, social media, and mass mailings, all at Defendants' cost.

    k.  From passing off any of the goods or services Defendants offer as those of dōTERRA or passing off Defendants' goods as being manufactured for dōTERRA.

    l.  Requiring Defendants to file with the court and to serve upon dōTERRA's counsel within ten days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order.

2.  The entry of an order under 15 U.S.C. § 1116 providing for the seizure of Defendants' "Deep Blue Rub" and "doTERRA On Guard" products and any other goods of Defendants that use a counterfeit of one or more of the dōTERRA Marks.

3.  The entry of an order under 15 U.S.C. § 1118 requiring the delivery and destruction of all labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession bearing the doTERRA Marks; any goods, labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession containing a word, term, name, symbol, device, or combination thereof, designation, description, or representation that is found to constitute a violation of 15 U.S.C. § 1125(a); and any goods, labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession containing a reproduction, counterfeit, copy, or colorable imitation of the DOTERRA famous mark, and all plates, molds, matrices, and other means of making the same.

4.  The entry of an Order:

a.  Requiring Defendants to provide an accounting of all sales of their "Deep Blue Rub" product, their "doTERRA On Guard" product, and any other goods that were sold, offered for sale, advertised, or distributed in violation of Section 32 or Section 43 of the Lanham Act.

b.  Awarding dōTERRA the Defendants' profits from all sales of their "Deep Blue Rub" product, their "doTERRA On Guard" product, and any other goods that were sold, offered for sale, advertised, or distributed in violation of Section 32 or Section 43 of the Lanham Act. Judgment should be entered for three times the amount of Defendants' profits, if those profits are greater than dōTERRA's actual damages, as permitted by 15 U.S.C. § 1117(b).

c.  Awarding dōTERRA three times its actual damages, as permitted by 15 U.S.C. § 1117(a) and (b).

d.  Awarding dōTERRA costs and expenses, including reasonable attorneys' fees, incurred by dōTERRA in connection with this action as provided for by statute or by law, including but not limited to 15 U.S.C. § 1117(a) and (b).

e.  Awarding dōTERRA prejudgment interest at an annual interest rate established under applicable law, including 26 U.S.C. § 6621(a)(2), from the date of service of this complaint through the date of judgment, as permitted by 15 U.S.C. § 1117(b).

f.  Granting such other and further relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, dōTERRA hereby demands a trial by jury in this action for all issues that are triable to a jury.

DATED: January 4, 2023

/s/ Stephen C. Biggs
Steven C. Smith
Kipp S. Muir
Aaron R. Harris
Tyler Hawkins
Stephen C. Biggs

*Attorneys for dōTERRA Holdings, LLC and dōTERRA International, LLC*